# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| KIMBERLY ANN MATHIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. CIV-15-1195-SM |
| CAROLYN W. COLVIN, acting Commissioner Social Security Administration, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kimberly Mathis (Plaintiff) brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Acting Commissioner's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge Vicki Miles-LaGrange referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Doc. 5. The parties then consented to the undersigned's exercise of jurisdiction over all further proceedings, including the entry of a final judgment. Doc. 10. Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the undersigned affirms the Commissioner's decision.

## I. Administrative proceedings.

Plaintiff applied for benefits, and, by amendment, alleged her impairments became disabling on May 3, 2005. AR 12. AR 601-05, 12. The Social Security Administration (SSA) initially and on reconsideration denied Plaintiff's claim. *Id.* at 385-89, 392-94. After a hearing and an unfavorable decision from the ALJ, the Appeals council remanded because Plaintiff was not present at the hearing and there was an issue regarding notice. *Id* at 333-34. *Id.* at 155-63, 335-51, 414-15, 331-34. After another hearing and unfavorable decision, the Appeals Council again remanded. *Id.* at 352-75, 480, 376-80. The Appeals Council ordered the ALJ to "[i]f necessary, obtain evidence from a medical expert to clarify the nature and severity of [Plaintiff's] impairments . . . ." *Id.* at 378. A different ALJ held a hearing, received additional testimony, and determined Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 35-79, 9-34. The SSA Appeals Council found no reason to review her decision, and the ALJ's decision became the Commissioner's final decision. AR 1-6. Plaintiff now seeks review of that decision. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (*citing Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1520; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If she succeeds, the ALJ conducts a residual functional capacity (RFC)[1] assessment before considering step four to determine what Plaintiff can still do despite her impairments. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, at step four, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner at step five to show Plaintiff retains the capacity to perform a different type of work and that such work exists in the national economy. *See*

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R § 404.1545(a)(1).

*Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis of the Commissioner's final decision.

### A. The Commissioner's final decision.

The ALJ applied the prescribed sequential analysis to determine if Plaintiff was disabled within the meaning of the Social Security Act and found that through June 30, 2006, the date she last met the insured status requirements of the Social Security Act, she:

(1) was severely impaired due to her status following cervical fusion, and had the non-severe mental impairments of PTSD, depressive disorder, and pain disorder secondary to general medical condition by history;

(2) had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and has non-exertional limitations. Specifically, she had the standing and walking capacity associated with light exertion work, but the lifting/carrying capacity associated with sedentary work. As such, she:

    (a) can occasionally and frequently lift/carry less than 10 pounds,

    (b) can walk/stand up to 6 of 8 hours with normal breaks,

> > (c) can sit for up to 6 of 8 hours,
> >
> > (d) can occasionally balance, stoop, kneel, crouch, and crawl,
> >
> > (e) can occasionally grip/handle and reach, but
> >
> > (f) cannot climb ladders, ropes, or scaffolds;
>
> (3) was able to perform jobs that existed in significant numbers in the national economy; and so
>
> (4) was not disabled.

AR 15, 23, 27.

**B.  Review standard.**

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### C. Plaintiff must establish disability on or before June 30, 2006.

"An important requirement in this case is that [Plaintiff] had to show [s]he was disabled on or before h[er date last insured – June 30, 2006]." *Vititoe v. Colvin*, 549 F. App'x 723, 728 (10th Cir. 2013) (claimant had to establish that on or before his date last insured he could not engage in any substantial gainful activity for a continuous twelve-month period); *see Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (holding "the relevant analysis is whether the claimant was actually *disabled* prior to the expiration of her insured status").

### D. Plaintiff's claims.

#### 1. Alleged step two error.

Plaintiff claims that the ALJ erred at step two of the sequential evaluation process by failing to find Plaintiff's "chronic lumbar back pain, chronic migraine headaches, insomnia, depression, post-traumatic stress disorder, and personality disorder to be 'severe.'" Doc. 12, at 13.[2] She submits that the test for a severe impairment is de minimis and she cites record evidence which, in her view, demonstrates each of these conditions has

---

[2] Citations to court documents are by their electronic case filing designation and pagination; quotations are verbatim unless otherwise indicated.

more than a minimal effect on her ability to perform basic work activities. *Id.* at 13-16.

Even assuming error, it is harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); *see also Smith v. Colvin*, 821 F.3d 1264, 1266-67 (10th Cir. 2016 (where the ALJ "went on to consider [claimant's RFC] . . . any error at step two would have been harmless."). The undersigned finds the ALJ did just that, and as such, any step-two error here does not require reversal of the unfavorable decision. *See* AR 23.

### 2. Alleged failure to derive a proper RFC assessment.

Here, Plaintiff makes two claims. Doc. 12, at 16-19. First, she maintains that "when formulating an RFC . . . [t]he ALJ must also consider any medical opinions in the form of statements from acceptable medical sources reflecting the medical source's judgment about the nature and severity of the impairment and resulting limitations. 20 C.F.R. § 404.1527." *Id.* at 16. She points to this February 2006 opinion by Arthur Conley, M.D., who performed Plaintiff's neck surgery in May 2005:

> [B]etween [Plaintiff's] myelopathy and residual numbness and tingling in her hands which make upper extremity fine motor control difficult, she cannot key stroke or do any kind of work

7

> there. Her neck motion and pain is too severe to tolerate her even sitting or standing. At this point, I would consider her functionally totally disabled on a permanent basis. (Tr. at 725).

*Id.* at 16-17. As Plaintiff acknowledges, *id.* at 17, the ALJ gave this opinion some weight. See AR 25.

Plaintiff faults that determination, arguing that "SSR 96-2p requires that a treating physician's opinion be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in the record. *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004)." Doc. 12, at 17. To support her argument, she submits only this:

> In this case, Dr. Conley's opinion is entitled to controlling weight as he has had a lengthy treatment relationship with [Plaintiff]. Dr. Conley had seen [Plaintiff] for over a year. (Tr. at 721-759). Not only did he have a lengthy treating relationship with Mathis, but he is also a specialist and served as her surgeon. As such, his opinion should have been given controlling weight.

*Id.* Apart from voicing her disagreement with the ALJ's ultimate decision to give Dr. Conley's opinion some but not controlling weight, Plaintiff does not challenge (or even address) the reasons the ALJ stated for doing so:

> As far as the opinion evidence, the Administrative Law Judge has considered the February 2006 opinion of the claimant's neck surgeon, Dr. Conley . . . . The Administrative Law Judge gives this opinion some weight. The residual functional capacity set forth above includes limitations on use of upper extremities. However, the Administrative Law Judge also notes the persistent findings of Dr. Conley regarding nondermatomal sensory loss, varying degrees of effort, different results depending on whether

8

the claimant was distracted or not distracted, non-physiologic or breakaway weakness (Exhibit 3F). Dr. Conley withdrew from post-op medication management because the claimant had gone back to her primary care physician to start back up on all her pre-op pain medications. The Administrative Law Judge finds these objective findings by Dr. Conley are inconsistent with a conclusion of inability to engage in substantial gainful activity on a sustained basis. But, as noted above, the Administrative Law Judge concurs there should be limitations in use of upper extremities.

AR 25.

Plaintiff fails to demonstrate error. She fails to direct the court to any authority to support her sole contention that the ALJ was somehow required to give Dr. Conley's opinion controlling weight because he was a specialist and Plaintiff's surgeon and had treated her for over a year.

Second, Plaintiff maintains "[t]he ALJ also failed to develop a proper RFC, because she did not include all of [Plaintiff's] limitations." Doc. 12, at 17. She claims "the ALJ's RFC fails to address any non-exertional mental limitations that exist as a result of her depression, PTSD, and pain disorder. (Tr. at 23)." *Id.* Plaintiff alleges:

> Dr. Robert Danaher, PsyD diagnosed [Plaintiff] with Depressive disorder NOS, Pain disorder secondary to a general medical condition by history; Posttraumatic Stress Disorder; and Rule/Out Personality Disorder NOS with history; Posttraumatic Stress Disorder; and Rule/Out Personality Disorder NOS with Histrionic Features. (Tr. at 702). Furthermore, [Plaintiff] was treated for depression and anxiety by her primary care physician, Dr. Schoelen. (Tr. at 805, 810, 821, 842, 849, 862, 863, 866, and 871). State agency medical consultant, Dr. Swallow opined that [Plaintiff] was limited to simple tasks with routine supervision;

9

> relating to supervisors and peers on a superficial work basis; cannot relate to the general public. (Tr. at 776). Dr. Burnard Pearce, PhD agreed that [Plaintiff] had the limitations as opined by Dr. Swallow. (Tr. at 873). Dr. Lev testified that, "we know there's the PTSD history, but everything seems to point to the fact that her symptoms are exacerbated - - actually caused by her physical complaints." (Tr. at 46). He also stated that [] [Plaintiff] has mental limitations, but they are caused by her physical diagnosis. (Tr. at 47, 48). Dr. Levit indicated that physical pain can cause a worsening of any symptoms of PTSD. (Tr. at 48). Despite all of the medical evidence indicating the presence of mental limitations, nowhere in the RFC is there any limitation addressing any mental limitations she is suffering from, whether caused by psychological or physical limitations.

*Id.* at 17-18.

In reviewing Plaintiff's mental impairments, the ALJ noted Plaintiff failed to mention any on her disability application and was not receiving mental health counseling. Even though her primary care physician had prescribed psychotropic medications and valium, he made no notation of any functional limitations stemming from mental impairments. *See* AR 20. The ALJ further noted that Dr. Danaher based his assessment only on Plaintiff's self-reported symptoms. *Id.* Plaintiff reported to Dr. Danaher that she had been referred to mental health counseling but had "always refused treatment." *Id.*

The ALJ also relied on the opinion of Dr. Levit, a medical expert who testified at Plaintiff's administrative hearing, which "did not suggest any discrete mental impairment with mental limitations." *Id.* The ALJ gave

10

greater weight to Dr. Levit's opinion, because he had full access to the complete medical evidence of record and was not limited to Plaintiff's self-reported history and symptoms. *Id.* at 21. The ALJ also considered the state agency psychological consultants' opinions from Drs. Hannah Swallow and Bernard Pearce, but gave these "little weight" as they lacked support in the medical evidence of record. *Id.*

At the hearing, Dr. Levit testified regarding Plaintiff's mental limitations. *Id.* at 45. He testified that Plaintiff's psychological complaints stemmed from her physical condition including Plaintiff's panic attacks, migraine/headaches, depression disorder—each is "secondary to a general medical condition by history . . . ." *Id.* "[E]verything seems to point to the fact that her symptoms . . . [are] caused by her physical complaints." *Id.* at 46. Dr. Levit considered Plaintiff's function report, and noted it "was mostly based on physical[] too." *Id.*; *see id.* at 650-59.

Plaintiff further maintains that despite finding that Plaintiff "had mild limitations in activities of daily living, social functioning, and concentration, persistence, and pace," Doc. 12, at 18, "the ALJ omitted any mental limitations from the RFC, despite finding that there were mild limitations. (Tr. at 21-22). As such, the ALJ failed to perform a proper RFC analysis . . . ." *Id.* at 19. Plaintiff suggests that in assessing Plaintiff's RFC, the ALJ "simply . . . disregard[ed]" what she had found at step two to be Plaintiff's

11

nonsevere mental impairments. *Id*. In support of her claim, she argues that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at Step 4 and Step 5. *Wells v. Colvin*, 727 F.3d 1061, 1068-1069 (10th Cir. 2013)." *Id*.

The ALJ's findings regarding Plaintiff's mild limitations were in "broad functional areas . . . known as the 'paragraph B' criteria." AR 21. As the ALJ correctly recognized, the Social Security Administration has specifically directed by Ruling that "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Id* at 22; *see* SSR 96-8p, 1996 WL 374184, at *4 ("The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF."). The ALJ concluded, "therefore, the following [RFC] assessment reflects the degree of limitation the Administrative Law Judge has found in the 'paragraph B' mental function analysis." AR 22. And, as detailed above, the ALJ, relying on the opinion testimony of Dr. Levit, concluded that Plaintiff's mental

12

limitations were tied to her physical restrictions and subsumed through the significantly limited physical RFC.

Once again, Plaintiff fails to demonstrate error.

### 3. The ALJ's credibility assessment.

Plaintiff last challenges the ALJ's credibility assessment, arguing the ALJ improperly determined she possibly engaged in "drug-seeking behavior." Doc. 12, at 19-20. She maintains her "overall amount of medical treatment" "bolster[ed] her credibility regarding her complaints of pain." *Id.* at 20.

The ALJ found:

> After careful consideration of the evidence, the Administrative Law Judge finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> The claimant has had access to medical care and long term treatment with narcotics. However, there is little substantiation of etiology of physical complaints, with the exception of the cervical condition that warranted the surgery involved in this case.
>
> The record indicates activity inconsistent with disabling physical impairment, e.g., *riding a motorcycle* (Exhibit 7F/25, March 2006). The exertional requirements of riding a motorcycle greatly exceed her preferred exertion level of lying on the couch 8 hours per day, getting up only to go to the bathroom, per her hearing testimony. Despite her subjective complaints of increasing symptoms, in September 2006, she declined further work up offered by her neck surgeon, to include Myelogram, CT scan, EMG (Exhibit 3F/3). *This is not consistent with her reported levels of pain and limitation of functioning.*

> The *record also shows inconsistent presentation of symptoms* even in the same examination. She had different results on physical examination depending on whether she was distracted or not; she gave varying degrees of effort in strength testing; she had non physiologic weakness, and nondermatomal patterns of sensory deficits. Dr. Conley noted in September 2006: "Her motion in the neck is actually the best I have ever seen as we talk and she is quite animated in the office today and clearly moves her neck well." (Exhibit 3F/3).
>
> The record suggests *possible narcotic seeking behavior*. The claimant does have long term use of scheduled narcotics. At her July 7, 2005 psych consultative examination she reported taking valium since age 14 and that she was prescribed barbiturates for sleep and a lot of different medications to keep her calm (Exhibit lF/6). At her July 2005 physical consultative examination by Dr. Davis, the claimant reported that throughout the year she relieved her depression with extra pain medication (Exhibit 13F/8). She reported her current medication to include valium, primosome [sic], lortab, adipex (phentermine) and albuterol (Exhibit 13F/9). The treatment record from the claimant's primary care physician is suggestive of narcotic seeking behavior. This is evidenced by the lack of objective substantiation of etiology of her back pain and headaches. Her primary care physician prescribed long-term narcotic pain medication for these problems. There is no referral for evaluation by neurologist or imaging or EMG for repeated complaints of back pain. When Dr. Conley tried to remove certain narcotic pain medication and valium from the claimant's medication regimen, post-operatively, she *proceeded post haste back to her primary care physician*. Her *primary care physician then re-started the claimant back on all her pre-op medication.*

AR 24-25 (emphases added). The ALJ also noted that Plaintiff's February 2007 function report revealed she brushed her horses, while also reporting an inability to hold anything. *Id.* at 21-22. She irons, shops, does laundry, drives short distances, and lifts furniture, but needs helps dressing and no

14

longer cooks. *Id.* at 650-57. She reported in 2005 she no longer drove, yet was in a car accident in 2006 and reported riding a motorcycle as well. *Id.* at 293, 698, 810. And she reported lifting furniture in 2010. *Id.* at 946.

Credibility determinations remain the province of the ALJ, and the court will not overturn them if substantial evidence supports the determinations. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Here, the ALJ cites medical findings throughout the record to determine Plaintiff lacks credibility and appropriately gives limited weight to doctors' opinions derived from her non-credible subjective claims. Because the ALJ set forth specific evidence to support his determination of Plaintiff's lack of credibility, this Court finds no error in the ALJ's rejection of her subjective complaints as to pain. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

## IV. Conclusion.

The court affirms the Commissioner's decision.

ENTERED this 15th day of July, 2016.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE